PHILLIP A. TALBERT
United States Attorney
KRISTIN F. SCOTT
ROSANNE L. RUST
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>MARIA DICKERSON,<br><br>   aka "Dulce Pino"<br>   aka "Maria Dulce Pino Dickerson,"<br>   aka "Dulce Brubaker,"<br><br>                Defendant. | CASE NO. 2:24-CR-00252 JAM<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR RELEASE |

### I.     INTRODUCTION AND ARGUMENT

Through counsel, Maria Dickerson ("Defendant") has filed a Motion for Release (ECF No. 18) after she was detained on September 4, 2024. *See* ECF Nos. 13, 14. In her Motion, Defendant fails to provide the Court with the necessary assurances to secure her appearance under the 18 U.S.C. § 3142(g) factors. Accordingly, the United States requests this Court deny Defendant's Motion.

    **A.**     **Defendant cannot re-open the issue of eligibility under 18 U.S.C. § 3142(f).**

In her Motion, Defendant spends a significant portion of the filing arguing whether Defendant's case is even eligible for a detention hearing under 18 U.S.C. § 3142(f). Here, two separate courts have already determined eligibility[1] under the law of the case, which includes finding Defendant poses a

---

[1] The United States argued the case was eligible for a detention hearing pursuant to 18 U.C.S.

UNITED STATES' OPPOSITION TO DEFENDANT'S
MOTION FOR RELEASE         1

"serious risk of flight" under 18 U.S.C. § 3142(f)(2)(A).[2] Accordingly, this is not the appropriate forum to review the eligibility determination.

### B. Defendant's newly proffered third-party custodians, sureties, and property do not create a viable release package.

The release conditions suggested by Defendant are not viable options to assuage the concerns that led to the original detention determination. Third-party custodians and sureties should not include victim or witness investors or other potential witnesses to the offense and relevant conduct. Further, actions taken by individuals in Defendant's network suggest that she has the means and support willing to assist in flight. Accordingly, the level of supervision proffered by Defendant would be inadequate to offset the serious risk of non-appearance in this case and therefore her Motion should be denied.

#### 1. Defendant does not offer viable third-party custodians.

##### M.R., realtor

This suggested third-party custodian sold Defendant the 6212 N. Point Way, Sacramento, residence that was purchased with illicit proceeds and which is the subject of Count 30 in the Indictment in this case. It is unknown how much of the illicit proceeds of the home purchase were received by this individual for her services. Moreover, this individual transferred at least $10,000 to Ubiquity LLC, another purported investment vehicle begun by Defendant during her Creative Legal Fundings ("CLF") scheme. Finally, the United States understands that this individual reported to Pretrial Services that she travels extensively on lengthy trips often exceeding one month or more. This individual has an upcoming one-month trip to the Philippines in November. Someone who is a witness to offenses, a potential victim, and who engages in frequent travel is not a viable custodian.

##### K.L.S., commercial truck driver

No information has been proffered about this third-party custodian, including information on his residence—where Defendant would presumably reside upon release; nor is it clear how this individual's work commitments would allow him to appropriately monitor Defendant. As of September 16, 2024,

---

3142(f)(2)(A) and (f)(2)(B).

[2] *See* Court Minutes from Sept. 3, 2024, stating "The court found a Detention Hearing was warranted and [granted] the Government's Motion [9] for Detention Hearing." ECF No. 10.

this individual has not returned attempts of contact from Pretrial Services.

<u>I.G., S.G., sons of Defendant</u>

Defendant previously proffered these family members as third-party custodians—the prior detention determination demonstrates they were not seen as viable custodians. Further, both sons appear to have reaped benefits of Defendant's fraud, including driving multiple Mercedes Benz vehicles and at least one son receiving tens of thousands of dollars in illicit proceeds transferred to him by Defendant. Next, the United States is concerned about the use of these individuals, with or without their knowledge, to facilitate fraud and fund transfers through accounts in the names of these individuals and at least one LLC owned by one of these individuals (Esses LLC). Finally, Defendant was able to commit her fraud scheme unfettered while living with these individuals originally. Accordingly, there is little assurance these individuals will be able to effectively monitor Defendant's activities going forward.

**2.     Defendant has not offered viable sureties.**

<u>R.B.[3] & J. B.</u>

When first interviewed by Pretrial Services on September 4, 2024, J.B. stated that she was unable to assist with bond due to previously helping Defendant with finances and observing that Defendant "does not have any money left." Further, J.B. has also invested approximately $15,000 in Defendant's CLF fraud scheme and J.B. signed an investment agreement. On March 27, 2024, J.B. submitted a victim claim to the IRS wherein she stated she had only received $1,000 back on her $15,000 investment. As a victim in the charged scheme, J.B. should not serve as a surety.

**3.     Defendant has not offered a sufficient property bond.**

<u>The Payson, Arizona, Property</u>

Defendant now proffers this Arizona property owned by her current husband. However, as the United States observed in its original Detention Motion, Defendant's husband invested hundreds of thousands of dollars in her fraud scheme. Defendant's husband has repeatedly messaged and communicated with investors in CLF and other shell company investment vehicles offered by

---

[3] In Defendant's motion, she offers R.B. and J.B. as potential sureties. Based on the information currently known to the United States, R.B. appears to be married to J.B. an investor and claimed victim in the CLF fraud.

Defendant, including Ubiquity LLC, and in fact, according to at least one confirmed investor, Defendant's husband solicited this investor to invest with Ubiquity LLC and accepted investment funds from this investor. Most recently, while Defendant has been detained, her husband has facilitated three-way calls between Defendant and other individuals, including at least one investor who Defendant actively solicited for bail money even though Defendant owes that investor money. This Court should have significant reservations and concerns about the involvement of Defendant's husband in any portion of her release conditions, including a property offered to secure her bond.

### C. **Defendant persists in her fraud.**

After Defendant learned of the federal investigation into her CLF scheme, she registered and opened additional shell companies through which she solicited investments in similar form and substance to those she obtained through CLF. Despite owing millions to investors and defaulting on payments, Defendant continued to collect new investor funds. In June 2023, Defendant collected approximately $20,000 from an investor in Ubiquity LLC, another shell investment company that Defendant registered in May 2023. After receiving this initial investment, Defendant told the same investor that she was operating Lucrative Holdings LLC, described as being in the same line of business as Ubiquity. From December 2023 to June 2024, Defendant collected additional investments from this investor for Lucrative Holdings LLC by directing the investor to transfer funds to a Zelle account registered to one of Defendant's sons, S.G. Despite only returning $1,500 to this investor, according to this investor, Defendant recently asked for $300,000 in bail money on a three-way jail call facilitated by Defendant's husband.

According to another investor, Defendant invited him to her residence in July 2024, and she claimed that she had a $50 million net worth. Defendant also said she ran businesses and convinced this individual to invest $5,000 in what appears to be another shell company investment vehicle, Salig LLC.

Finally, investigators in this case have further examined Defendant's purchase of the Mercedes-Maybach GLS600 for approximately $235,795.00 previously described in the United States' initial detention filing. *See* ECF No. 9. Records demonstrate that the bank forcibly closed Defendant's Lucrative Holdings LLC bank account in April 2024. However, in May 2024, Defendant knowingly presented the Mercedes dealership with two checks from that bank account for $144,816.31 and

$150,000.00 for the purchase of this Mercedes-Maybach. Defendant took possession of the Maybach, registered it in her name, and has proceeded to drive it since May 2024, despite knowing she wrote false and fraudulent checks to the Mercedes dealership.

### D. Defendant's newly proffered custodians, sureties, and bond package fails to alter the detention analysis under the 18 U.S.C. § 3142(g) factors.

Defendant was previously ordered detained and has offered nothing to change the analysis of the Section 3142(g) factors that marshaled in favor of her original detention, specifically: (1) the scope, the nature, and the circumstances of the offenses charged; (2) the strong weight of the evidence against Defendant; (3) the attendant probability that the applicable Sentencing Guidelines in the circumstance of a conviction will likely result in an advisory range near the top of the Guidelines; (4) the fact that Defendant has unknown assets and assets that cannot be effectively restrained; (5) Defendant's significant ties outside of the United States and her history of frequent international travel; (6) Defendant's active attempts to deceive investors and her attempts to evade law enforcement detection; and (7) Defendant's use of aliases and false documents. Defendant continues to pose more than an ordinary risk of non-appearance.[4] She has the means, support network, and ability to flee, and no conditions or combination of conditions will reasonably assure her appearance as necessary.

## II. CONCLUSION

Accordingly, for the reasons stated above, the United States requests that this Court order the continued detention of Defendant pending trial in this matter.

Respectfully submitted,

Dated: September 16, 2024

PHILLIP A. TALBERT
United States Attorney

By: /s/ KRISTIN F. SCOTT
KRISTIN F. SCOTT
Assistant United States Attorney

---

[4] Should this Court decide to release Defendant, the United States continues to request that the stringent conditions it originally requested in its Initial Detention Motion (see ECF No. 9) be imposed. Such conditions were deemed reasonable in light of the circumstances by the initial magistrate who heard this matter on September 3, 2024.